Good morning, Your Honors. May it please the Court, I am Jeffrey Berry representing the Queen Hernandez. AOJ errs in rejecting the training opinions of Dr. Hart and Dr. Kaye. Dr. Hart was a spine specialist referred by Dr. Kaye, and in February 2013, making hands-on findings, he found loss of forward flexion, loss of lumbar lactosis, loss of lateral bending, and palpable pain from L3 down to S1 on the right. He reviewed the radiology, including the cost of spine MRI, and he had ordered Dr. Hart, who sufficiently rendered an opinion, and invited the AOJ to scout the opinion. But it wasn't based on sufficient clinical findings or objective evidence, and he insisted it was in disagreement with his own notes and his own records, right? Well, that's what he just said. Well, but I'm just trying to make sure that I have that right. I mean, I looked at the treatment notes. It says paraspinal muscle tenderness on one side, pain on both in one hip, and loss of forward flexion on bending. Then it says, no other loss of range of motion in lumbar or thoracic spine, full range of motion in your neck, no neurological deficits, full motor strength, intact sensation of all extremities, normal deep tendon reflexes, extremities were well perfused with no cyanosis or edema, only a slight haptalgic ache on the right, no positive straight leg race testing, no evidence of muscle spasms, which is what the AOJ is referencing. This does not reflect what Dr. Hart then recommends. Well, but also based on the thoracic spinal neurological evidence, you have to listen to this. This is a CI imaging study. Your prior thoracic fractures were all well healed, only mild impeachment on fecal sac. Some of this is I don't talk, not real talk. You probably say it better. With no canal or foraminal narrowing. He complained of mainly pain in the lumbar spine. MRI showed only mild and degenerative disease with no canal or foraminal narrowing, no findings regarding limitations. I mean, all of those go against what Dr. Hart said. Well, the radiologist left and he interpreted as a spine expert. And he said, even though all they're saying is, I see what you put in your treatment notes, it doesn't go along with what you're telling me, so I'm not going to give very much weight to what you tell me. And then I read the notes, and that's exactly right. I disagree, it's not exactly right. What in what I read you says what Dr. Hart suggests is the condition of your client? Well, the loss of forward flexion, the loss of lumbar latosis, the loss of lateral bending. These are all February 2013, right? It's April 2013, the findings. Well, they're hands-on findings. Why are they the cooperation of your client? Well, they're hands-on findings made by a spine expert. He touched her, he felt, he coerced, he discussed her, and he found no muscle spasm. He found no reaction in the straight leg where his initial cystic cyst, right? Which is indicative of no pressure on the clitoral vertebral disc. Oh, sciatica. Sciatica. No sciatica, right? Right. So, well, there's indentations on the spinal cord at the thoracic level. But he did receive. The loss of lumbar latosis is your best objective system. Loss of forward flexion. He's hands-on testing of that. What is the cooperation? Well, he's a spinal expert. He saw no reason to doubt. Well, he's hands-on findings. The purple comes, and then you and I can argue. But I can't really say there is no substantial evidence to sustain a male GYP. Well, as a contribution, I can have an argument. You can, like, take that evidence and go one way. I can take that evidence and go another. But if the jury decides this, and there's substantial evidence that suggests the way the jury decided it is right, I cannot do it. And there's substantial evidence here on a heart. Well, it's great. I don't know why you can't. I don't know how. I don't know what I've read you or what Judge May has told you. I could say, Dr. May seems to understand this better than I do. He said, I don't know how that isn't substantial evidence. Well, he's the expert. He's the one little expert. Well, let's move then. All right. Let's move on, Dr. Hart. Let's look at Dr. King. Well, let's look at the ankle. We have the extra evidence of the right ankle. We have the extra evidence from Dr. Tran showing obliterated ankle mortise and severe joint space narrowing. And, well, you're talking about the right ankle. Right ankle. So we have those. There was generally a CAM boot, an ankle brace, and rocker bottom shoes. The x-rays show the arthritis in ankle, but good relief with the CAM boot. In April 2012, the shoes were helping significantly, and she was doing well. Normal gait or slightly antalgic gait on the right side. December 2012, don't change modes of treatment. Sporadic treatment. Well, she didn't want to go into a fusion of her right ankle yet, and Dr. Hong certainly respects your pain claims. They also said that there was significant arthritic changes in the talus, the bone at the top of the front foot. Dr. Hong and Dr. Tran informed Dr. King goes on a non-exercise pain and on an inability to stand and walk. Really what we're really saying is can he give little weight to Dr. Hart, and he gave great weight to the state physicians because he says they're more consistent with record as a whole, more consistent with conservative course of treatment. And now we're left with Dr. King. Well, Dr. King was the primary care physician who oversaw it all and referred it out to the various specialists, including Dr. Hong, and he gave little weight to Dr. King, right? Right. And are you suggesting his determination there is flawed? Does he have the weight of the treating physician level? These are treating physicians. Just a minute. We're talking about treating physicians, but you don't have to give the treating physician any weight if you've given clear and specific reasons why you don't have to give him weight. He gave those, well, you and I have argued about whether he gave those about Dr. Hart now or to Dr. King. Right about Dr. King. Well, let me make a comment from Garrison first. Doing well, getting better. If Garrison couldn't advise, it doesn't mean it's all over. It means he can now stand and walk some. It doesn't mean he can stand and walk and do sedentary work. Well, here's the problem. It seems to me that what we have in this particular case is that we have two state physicians. He gave them great weight. There's no error, not even an argument of error, on Ammon and Mateus and what they've said. I didn't see any argument in your brief. So if you've got no weight to give to Dr. Hart, he gave great weight to Dr. Renfro, as he put it. So all we've got left for the RFC is whether they give any weight to Dr. King. Well, the state agency physicians didn't see all the evidence. They didn't see the December evidence lobby writings from Dr. Tran and Dr. Wong, for example. They also didn't see the Lombard URI, and they also didn't see the later opinions and political findings of Dr. Hart or Dr. King. They wrote before all of that. I understand. That's why I think you need to get to Dr. King. Because I don't know what my colleagues are going to do. I'm just giving you the questions. It seems to me you've got a problem with Dr. Hart. So tell me about King. Well, Dr. King referred the various specialists in her medical source statement, cited the radiology findings of the thoracic spine and lumbar spine, as well as the various clinical findings of the experts, particularly Dr. Wong and Dr. Hart. Dr. King found that she included this in her creation. This is Exhibit 18F, page 658, and she based that on the objective findings of an MRI, which was modeled on the lumbar spine, and x-rays. And x-rays don't show disc herniation. So why do you say Dr. King was off base? Well, I'm talking about the 2013 opinion. Of course, you submit similar age preference. It's the 2013 opinion. Well, or the 2013. The lumbar spine MRI was ordered by Dr. Hart, and he did not want to give us an MRI, or the photofluorescent MRI. No, Dr. Hart ordered a lumbar MRI, and that was in September of 2012. After the state agency physicians reviewed it, Dr. Hart's interpretation of that, the evidence he studied, was that it was mild. It was consistent with her pain points. That's what he found. And he found that it was consistent with his hands-on testing of her. So he did make clinical findings hands-on, based on both radiology and hands-on testing. But if I could quickly move to the EE, if I can, I have a little bit of a mouth. Yeah. I'm trying to point out errors that the ALJ made in disagreeing with Dr. King. Okay. Be good. Yeah. And I think Dr. Ray has really had a game changer, because of what I said. He's got great weight for Dr. Prince, so he gives great weight to these, if you will, state physicians. And I don't really know what errors Ammon and Mateus made. I didn't find that in your brief. So we're really left with Hart and King, and whether they should have given them more weight than they did. And that's why I took you in on Hart. And now we're waiting for what you have to say about King. Right. Why is he wrong on King? She referred to the various radiological findings and the experts that reported to her, as well as her own treatment notes. So she does have the basis. It's the particular Dr. Hong on the right ankle, again, endorsing her non-exertional gain, again, finding a liberation of the aneurysm. All of that is consistent with continuing determinative changes for his fear of the right ankle. And the fact that she has boot, or whatever, didn't have surgery yet, I thought she hadn't had surgery long or invented it. But boot allowed her to stand, allowed her to walk. OK, doing well. I mean, she's not completely sedentary or having to lie down all the time. What the LJ says about Dr. King's fitness is, quote, neither her own progress notes citing Exhibits 13F and 15F, nor any other training or consulting source, has documented clinical findings or diagnostic studies that support the level of severity that she has endorsed. What's wrong with that basis for the LJ discounting King? Well, the question is, she, King said, fundamentally, she can't sustain her workday. She's got to lie down part of the time. These are the main things. And the clinical findings and the radiological findings were from Dr. Hong, Dr. Tran, and then Dr. Hart. And it related to hemorrhoid and the lumbar spine, the earlier thoracic spine stuff, and then all the x-rays of the right ankle in December 2012. And the LJ said that doesn't sustain the level of severity of complaints. Well, the question is, if you can say that the source, King overstated how much she couldn't walk, but increasingly she can't sustain any of her workdays. She can't do regular and continuing work and wouldn't have to lie down. That's really what's going on. So the LJ's not addressing what you might say is the graveling of what makes people disabled in step five. All right. Do you want to say a few words? Yes, sir. Good morning, honors. I'm Laura Brown on behalf of the Commission on Social Security. I'd like to take you to the last one where we're talking about Dr. King. Right. I found something unusual in the ALJ's recital of the Evidence section. It says, neither all progress notes exhibit 13th. Exhibit 13th are not Dr. King's progress notes. They're Dr. Hall's. So the ALJ was wrong in citing the Evidence, which the ALJ found did not support. Dr. King has to 13th. How do you get around that? Well, I think you get around it by the plain language of what the ALJ said in evaluating Dr. King. Neither her own progress notes nor any other treating or consulting source has documented clinical findings. Do you think that no other treating or consulting source referred to Dr. Hall? I think there is a citation error that you pointed out. I don't think it matters because I don't think the objective evidence from any of the physicians, and I think the ALJ here is referencing all of them, I don't think that evidence supports the extreme limitations that Dr. King found, which were very extreme. By the way, one point said could not even stand or walk for any, for zero minutes, standing or walking. But I guess what Judge May has pointed out is something which I also found, which seems to be that at least as to Dr. King, the ALJ was not citing Dr. King's notes to offset what Dr. King said, but the ALJ was citing other notes while it was referencing it as the FN word, Dr. King's notes. I think that the record is consistent with that interpretation, but I don't think it's a reversible error. And thereafter, when I read your brief, it didn't seem to be you were really focusing in on what Dr. King's notes were, part of what the ALJ had said, but you started to emphasize different inconsistencies than the ALJ had ever relied upon. We can't do that. We can't be whipped. You can't do that. We have to look at what the ALJ actually said, not something else, but just from the conclusion. That's right, but here the ALJ actually said nor any other treating or consulting source, and the ALJ doesn't have to. We can make inferences from that, and I think it's a logical inference, especially given that the ALJ is citing evidence that supports the point that the objective medical documents are inconsistent with the limitations that Dr. King assessed. Well, my word was I was a lot more convinced by what you had to say that the ALJ had never said because I could at least find it in Dr. King's notes than I ever was about what the ALJ had suggested we shouldn't rely on Dr. King for. I mean, if I look at your February 2013 treatment note and your talk about that in your brief, that's pretty good stuff, and it relies on this note as the cervical spine x-ray is normal. My only trouble was when I tried to go find that under the ALJ, I couldn't find it. He never cites any of this, nor mentions the cervical spine x-rays being normal. I'm not sure that's right. Let me just make sure here that I know that he says... If he does, it's only in trying to decide whether he should believe the claimant or not. The ALJ specifically addresses the neck in finding that it was not a severe impairment on page 16, and I think that may be why the ALJ doesn't get into the cervical spine later, and, of course, with the RFC, because the ALJ finds that the neck problems are not severe based on the interdependencies. So if I find that the ALJ has made an improper evaluation of the medical opinion of Dr. King, what need I do? I think, well, the government's position is that if it is improper, that terror is harmless. I understand that's the position. What if I don't agree? Then what do I do? If you don't agree, then you would remand, I suppose. No. No, you definitely would not do that. So that is, in rare cases, as you're aware of the law, that it can be done sometimes, but only when the evidence demands a conclusion of disability and there is nothing left for the agency to decide here. You have state agency experts here who found that the claimant... No, but if, in fact, this is just hypothetical, but if, in fact, Dr. King, the training physician, if, in fact, there's nothing to suggest that we should rely on his testimony, at that point, all these other experts are of little value, are they not? Because if we give heavy weight to the training physician, what do we got left? But, Your Honour, I still... This ALJ statement, neither her own province nor any other treating or consulting source has documented clinical findings that ALJ is going after... You're trying to do a curveball here. I'm not going to go back to this idea that you can get me to out-believe that the ALJ has reasonably evaluated the opinion of Dr. King. I'm trying to figure out, if the ALJ has not, then what is my... Where do I go from there? I will have, then, an opinion of Dr. King, which I'm not sure what the ALJ truly believes about Dr. King. And that's why you have to send it back, because the ALJ... There are ambiguities here, if you accept Dr. King's opinion, because you have an opinion that's not well-supported by the record, and you have stated... The ALJ didn't say that. The government has well-organized their approach now in the Red Bridge area, but the ALJ never said that. So if you find that the ALJ didn't say that, and it needs to go back, then the ALJ needs to be able to... The agency needs to evaluate the evidence, re-evaluate the evidence, to determine what the RFC and the extent of the limitations are, given proper way to... Given how Dr. King... Sorry? Given how Dr. King's opinion... And if you reject Dr. King's opinion, you can't even advocate specific reasons based on substantial evidence, even records, not only of Dr. King, but any other objective evidence, such as medical records, correct? That's correct. Your position is that he's already done that by citing other treaty or consulting source. That's right. When we look at... The ALJ must provide specific reasons, supported by substantial evidence for discounting the claimant's statements about symptoms. The ALJ says the medical evidence was sufficient with the claimant's descriptions, the conservative medical treatment, the activities of daily living were consistent, the medication and treatment have been helpful and are effective. Does the ALJ give enough sight as to the reason for these determinations there? Because as I understand it, they've got to cite some record responses as to why he believes what he does. Well, to give a specific example, when you mentioned the activities of daily living, the ALJ mentions what those specifically were, that she admitted that she didn't have difficulty with household tasks. I believe the ALJ also points to her work as a caregiver for her sister and made the point that it would be inconsistent with total disability. Well, my worry was it seems to me that what the ALJ does when he gets down to this claimant's credibility is the ALJ just refers me to other places in the opinion without citing what it is as the basis for his determination. Is that sufficient? First of all, I don't agree with that, Your Honor. When I read pages 18 through 18, 19, and 20, I see, first in the middle of page 18, a recitation of the testimony and then several points where the ALJ says, here's why the attributivity seems to be overheaded here, and I think here's the conservative approach, and it ties it to the record and cites the record. So I'm not really sure what you're pointing me to, Your Honor. Does anyone have any other questions? I have one, Your Honor. Thank you, Your Honor. Yes, our blue brief and our gray brief outline all the postdoc rationalizations the government put forward. You can't rely on those. You have to rely on the ALJ. Your ALJ's decision, not the government's red brief. My worry was, not to suggest otherwise, but that, frankly, we were more accurate in pointing out the differences between what the ALJ used to discount Dr. King's testimony than were your briefs. Oh, the blue brief and the gray brief. Yes. I see it. Thanks. What does that say? Quite well taken. My colleague wrote the briefs, asked me to argue, and I'm doing the best I can here. I'm just saying that doesn't say that the briefs didn't make the argument. It just seemed that the argument was less than stellar about that, and if we hadn't have found it, nobody would be asking about it today. And then I said to myself, does that mean the argument is waived? No, the arguments weren't waived. They were raised with sufficient specificity. They were not the best writing sample, but they were still raised. The ALJ didn't specifically, for my reasons to reject Dr. King, and the ALJ didn't understand Dr. Tran's, Dr. Hung's, radiological findings about the right ankle, obliteration of the mortis, all that. But if I could just comment for a moment on Dr. Renfro. Okay. He found simple one and two-step instructions. And the ALJ said, okay, simple repetitive tasks. That's boosting it up a reasonable level. But Dr. Renfro found those reasonable level are, one, have a rule out of all the jobs identified by the VE. That's it. Thank you.
judges: Bea, N.R. Smith, Lynn